# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Demont Goudy, as father and | ) | |
| next friend of L.G., a minor; | ) | |
| TABITHA SMITH, as mother | ) | |
| and next friend of A.C., a minor; | ) | |
| MIREYA RIVERA, as mother | ) | |
| and next friend of R.R., a minor; and | ) | 16 C 8676 |
| JENNIFER JOHNSON, as mother | ) | |
| and next friend of N.D., a minor; | ) | Judge |
| individually and on behalf of | ) | Magistrate Judge |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY EVANS, in his official capacity | ) | |
| as the Chief Judge of the Circuit Court of | ) | |
| Cook County; LEONARD DIXON, in his | ) | |
| official capacity as Superintendent of the | ) | |
| Cook County Juvenile Temporary Detention | ) | |
| Center; and COOK COUNTY, | ) | |
| | ) | **Jury Trial Demanded** |
| Defendants. | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Demont Goudy, as father and next friend of L.G.; Tabitha Smith, as mother and next friend of A.C.; Mireya Rivera, as mother and next friend of R.R.; and Jennifer Johnson, as mother and next friend of N.D.,[1] individually and on behalf of all others similarly situated, complain against Defendants Chief Judge of the Circuit Court of Cook County Timothy Evans, Superintendent of the Juvenile Temporary Detention Center Leonard Dixon and Cook County as follows:

---

[1] L.G., A.C., R.R., and N.D., are minors. Pursuant to Federal Rule of Civil Procedure 5.2(a)(3), they are identified by their initials.

## Nature of the Case

1.     This is an action for money damages, declaratory relief and injunctive relief brought pursuant to 42 U.S.C. § 1983. Plaintiffs, individually and on behalf of the class they seek to represent, allege violations of their rights under the Fourth Amendment of the United States Constitution.

2.     The Circuit Court of Cook County Juvenile Justice Division is responsible for conducting detention hearings[2] for juveniles arrested without a warrant and detained in anticipation of juvenile delinquency court proceedings. The Juvenile Justice Division only conducts detention hearings on business days and does not make any arrangements for juveniles arrested on weekends or court holidays to be brought before a judge for a determination of probable cause to detain until the next regular business day.

3.     Minors who are arrested by any police department in Cook County and held in custody in anticipation of juvenile delinquency court proceedings are typically imprisoned in the Cook County Juvenile Temporary Detention Center ("JTDC"), located at 1100 S. Hamilton Avenue, Chicago, Illinois. The JTDC routinely holds minors in custody over weekends and court holidays.

4.     The policies of the Juvenile Justice Division and the JTDC routinely result in juveniles' being detained for more than 48 hours without any probable cause hearing in direct contravention of the Supreme Court's mandate in *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991).

---

[2]     Under Illinois law, "detention hearing" is the term used to describe an initial court appearance to determine probable cause to detain a juvenile arrested without a warrant. 705 ILCS 405/5-407.

5.     Plaintiffs Demont Goudy on behalf of his minor son L.G.; Tabitha Smith, on behalf of her minor son A.C.; Mireya Rivera, on behalf of her minor son R.R.; and Jennifer Johnson, on behalf of her minor son N.D. challenge the constitutionality of these policies and practices. Pursuant to these policies and practices, the named Plaintiffs were each detained at the JTDC for more than 55 hours without any judicial determination of probable cause.

6.     As set forth in more detail below, there are two parties responsible for the unlawful detentions of the Plaintiffs.

(a)     Defendant Timothy Evans is the Chief Judge of the Circuit Court of Cook County. He has final responsibility for setting court schedules for the Juvenile Justice Division, including the time and frequency of detention hearings; and

(b)     Defendant Leonard Dixon is the Superintendent of the Juvenile Temporary Detention Center. Dixon is the top official in charge of administration and management of all operations of the JTDC and has final authority to set policies regarding custody of minors at the JTDC.

7.     The challenged policy and practice of providing detention hearings for minors only on business days is authorized (but not required) by Illinois law, which mandates that "[m]inors shall be brought before a judicial officer within 40 hours, exclusive of Saturdays, Sundays, and court-designated holidays, for a detention hearing to determine whether he or she shall be further held in custody." 705 ILCS 405/5-407.

8.     In the face of similar state laws purporting to authorize detention of minors without a hearing on weekends or court holidays, the Department of Justice has admonished that jurisdictions that fail to provide arrested minors a hearing

3

within 48 hours—including weekends and holidays—violate minors' Fourth Amendment rights. See, *e.g.*, U.S. DOJ Investigation of the Shelby County Juvenile Court, April 4, 2012 ("We recognize that a Tennessee statute allows a child to be detained for three days, or even longer, before requiring a detention hearing and probable cause determination. … However, to meet requirements of the Fourth Amendment, JCMSC must follow the 48-hour timeline under *Riverside*, not the state statute.") (available at:

https://www.justice.gov/sites/default/files/crt/legacy/2012/04/26/shelbycountyjuv_fin dingsrpt_4-26-12.pdf).

9.     Likewise, several courts have held that the requirement of a prompt determination of probable cause applies to minors held in juvenile detention facilities. *RWT v. Dalton*, 712 F. 2d 1225 (8th Cir. 1983) ("juveniles who are detained because they are suspected of committing criminal acts must be afforded a prompt probable-cause hearing. … Although [*Gerstein v.*] *Pugh,* [420 U.S. 103 (1975)] involved only the right of adults to a probable-cause hearing, we believe that the right must be extended to juveniles as well."); *In re S.J.*, 686 A.2d 1024, 1026 & n.6 (D.C., 1996) ("the trial court was without authority to order the detention of [minor] appellant for the period of time ordered here without a finding that there was probable cause…."); *State in Interest of K.W.*, 137 So. 3d 798, 800 (2014) ("The bedrock constitutional protections contained in the [*McLaughlin*] decision also apply to juveniles in delinquency proceedings.")

## Jurisdiction and Venue

10.     Jurisdiction for Plaintiffs' federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## Parties

12.     Plaintiff Demont Goudy is a resident of Chicago, Illinois. He is the father and next friend of L.G. who resides with him in Chicago.

13.     Plaintiff Tabitha Smith is a resident of Chicago, Illinois. She is the mother and next friend of A.C., her minor son, who resides with her in Chicago.

14.     Plaintiff Mireya Rivera is a resident of Chicago, Illinois. She is the mother and next friend of R.R., her minor son, who resides with her in Chicago.

15.     Plaintiff Jennifer Johnson is a resident of South Elgin, Illinois. She is the mother and next friend of N.D., her minor son, who resides with her in South Elgin.

16.     Defendant Timothy Evans is the Chief Judge of the Circuit Court of Cook County. Plaintiffs sue Chief Judge Evans in his official capacity. Pursuant to Article VI, §7(c) of the Illinois Constitution, Chief Judge Evans has general administrative authority over the operations of the Circuit Court of Cook County, including the Juvenile Justice Division. His constitutional authority includes the obligation to "provide for ... appropriate times and places of holding court." *Id*. As the Chief Judge, Evans has final authority to set court schedules for the Juvenile

Justice Division, including the dates, times and schedules for holding detention hearings.

17.     Defendant Leonard Dixon is the Superintendent of the Juvenile Temporary Detention Center. Plaintiffs sue Dixon in his official capacity. Pursuant to 55 ILCS 75/3(b), Dixon has been appointed to oversee, supervise and direct all functions relating to the JTDC. As superintendent, Dixon is the highest decision-maker with authority over the JTDC, and he determines the policies of the JTDC with respect to juvenile detainees' custody and confinement.

18.     Plaintiffs join Cook County, Illinois, pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003). The operations of the JTDC and the Circuit Court of Cook County are ultimately the financial responsibility of Cook County.

19.     Count I is brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant Chief Judge Evans has acted on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole on Count I of this Complaint. L.G., A..C., R.R., and N.D. seek to represent a class of similarly situated juveniles who are currently (or will be in the future) detained at the JTDC on a weekend and/or court holiday pending a judicial determination of probable cause in the Juvenile Justice Division. L.G., A.C., R.R., and N.D. seek injunctive and declaratory relief against Defendant Chief Judge Evans on behalf of the class.

**Factual Allegations: L.G.**

20.     L.G., who is 17 years old, was arrested by Chicago police on Friday, September 2, 2016, at approximately 7 p.m.

21.     The arresting officers did not have a warrant calling for L.G.'s arrest.

22.     Chicago police transported L.G. to the JTDC from a Chicago police station in the early morning hours of Saturday, September 3, 2016.

23.     At the time of the filing of this complaint, L.G. is currently being held in the custody of the JTDC and has not yet received a detention hearing or any other judicial determination of probable cause.

24.     L.G. has been in the custody and control of the JTDC from the early morning hours of Saturday, September 2, 2016, to the present.

25.     L.G. has been detained in excess of 70 hours without any judicial determination of whether there is probable cause to detain. L.G. was not taken to appear before a judge for a hearing to determine probable cause any time on Saturday, September 3, 2016; Sunday, September 4, 2016; or Monday, September 5, 2016.

26.     JTDC officials have held L.G. for more than 70 hours without a probable cause determination pursuant to Defendant Chief Judge Evans' and Defendant Superintendent Dixon's unconstitutional policies.

27.     As a direct and proximate result of the acts of the Defendants described above, L.G. suffered and continues to suffer damages including loss of physical liberty, physical pain and suffering, and emotional distress.

### Factual Allegations: A.C.

28.     A.C., who is sixteen years old, was arrested by Chicago police on Friday, July 29, 2016, at approximately 10:30 p.m.

29.     The arresting officers did not have a warrant calling for A.C.'s arrest.

30.     Chicago police transported A.C. to the JTDC from a Chicago police station in the early morning hours of Saturday, July 30, 2016.

31.     A.C. was held at the JTDC until approximately noon on Monday, August 1, 2016.

32.     A.C. was in the custody and control of the JTDC from the early morning hours of Saturday, July 29, 2016, to approximately noon on Monday, August 1, 2016.

33.     A.C. was detained at the JTDC in excess of 55 hours without any judicial determination of whether there was probable cause to detain. JTDC officials did not take A.C. to appear before a judge for a hearing to determine probable cause any time on Saturday, July 29, 2016, or Sunday, June 30, 2016.

34.      On Monday, August 1, 2016, at approximately 11:00 a.m., JTDC staff brought A.C. to the Juvenile Justice Division for a detention hearing. Following that hearing, A.C. was released from the JTDC to his mother's custody.

35.     JTDC officials held A.C. for more than 55 hours without a probable cause determination pursuant to Defendant Chief Judge Evans' and Defendant Superintendent Dixon's unconstitutional policies.

36. As a direct and proximate result of the acts of the Defendants described above, A.C. suffered damages including loss of physical liberty, physical pain and suffering, and emotional distress.

## Factual Allegations: R.R.

37. R.R., who is seventeen years old, was arrested by Chicago police on Friday, July 1, 2016, at approximately 8:30 p.m.

38. The arresting officers did not have a warrant calling for R.R.'s arrest.

39. Chicago police transported R.R. to the JTDC from a Chicago police station in the early morning hours of Saturday, July 2, 2016.

40. Over the July 4th holiday weekend, the Juvenile Justice Division did not hold detention hearings on Saturday, July 2, 2016; Sunday, July 3, 2016; or Monday, July 4, 2016.

41. R.R. was held at the JTDC until approximately 11:30 a.m. on Tuesday, July 5, 2016.

42. R.R. was in the custody and control of the JTDC from the early morning hours of Saturday, July 1, 2016, to approximately 11:30 a.m. on Tuesday, July 5, 2016.

43. JTDC officials detained R.R. in excess of 72 hours without any judicial determination of whether there was probable cause to detain. R.R. was not taken before a judge for a hearing to determine probable cause any time on Saturday, July 2, 2016; Sunday, July 3, 2016; or Monday, July 4, 2016.

9

44.    On Tuesday, July 5, 2016, at approximately 11:00 a.m., JTDC staff brought R.R. to the Juvenile Justice Division for a detention hearing. Following that hearing, R.R. was released from the JTDC to his mother's custody.

45.    JTDC officials held R.R. for more than 72 hours without a probable cause determination pursuant to Defendant Chief Judge Evans' and Defendant Superintendent Dixon's unconstitutional policies.

46.    As a direct and proximate result of the acts of the Defendants described above, R.R. suffered damages including loss of physical liberty, physical pain and suffering, and emotional distress.

## Factual Allegations: N.D.

47.    N.D., who is seventeen years old, was arrested by Village of Streamwood police on Friday, June 12, 2015, at approximately 11:00 p.m.

48.    The arresting officers did not have a warrant calling for N.D.'s arrest.

49.    Streamwood police transported N.D. to the JTDC from the Streamwood Police Department at approximately 3:00 a.m. on Saturday, June 13, 2015.

50.    N.D. was held at the JTDC until approximately noon on Monday, June 15, 2015.

51.    N.D. was in the custody and control of the JTDC from the early morning hours of Saturday, June 13, 2015 to approximately noon on Monday, June 15, 2015.

52. N.D. was detained in excess of 55 hours without any judicial determination that there was probable cause to detain. N.D. was not taken to appear before a judge for a hearing to determine probable cause to detain any time on Saturday, June 13, Sunday June 14, or Monday, June 15.

53. On Monday, June 15 around noon, N.D. was released to his mother's custody from the JTDC without any criminal charges and without ever being brought to appear before a judge.

54. JTDC officials held N.D. for more than 55 hours without a probable cause determination pursuant to Defendant Chief Judge Evans' and Defendant Superintendent Dixon's unconstitutional policies.

55. As a direct and proximate result of the acts of the Defendants described above, N.D. suffered damages including loss of physical liberty, physical pain and suffering, and emotional distress.

**Defendant Superintendent Dixon's Liability to the Named Plaintiffs**

56. It is well established that individuals arrested without a warrant are entitled to a judicial determination of probable cause within 48 hours.

57. It is the common, widespread and well-settled practice that juveniles transferred from police custody to the JTDC on weekends or holidays are detained in excess of 48 hours without a judicial determination of probable cause. This practice is so widespread and well settled that it constitutes a custom or usage with the force of law even though it has not been reduced to a written policy.

58.     At all times relevant to the detention of the named Plaintiffs, Defendant Superintendent Dixon knew that the Juvenile Justice Division did not hold detention hearings on Saturdays, Sundays or court holidays. Defendant Superintendent Dixon likewise knew that minors detained at the JTDC on weekends and holidays, including the Plaintiffs, were being held in excess of 48 hours without a judicial determination of probable cause.

59.     Although he knew or should have known that doing so would lead to violations of juvenile detainees' Fourth Amendment rights, Superintendent Dixon nonetheless approved of and authorized the detention of minors at the JTDC on weekends and holidays.

60.     By approving, condoning and/or turning a blind eye to the widespread violation of minors' Fourth Amendment rights, Defendant Superintendent Dixon acted and continues to act with deliberate indifference to the rights of L.G., A.C., R.R., N.D., and all other juveniles detained at the JTDC on weekends and holidays

61.     Defendant Superintendent Dixon's policy and practice described above was the moving cause behind the unlawful detentions of L.G., A.C., R.R., and N.D.

### Defendant Chief Judge Evans' Liability to the Named Plaintiffs and the Members of the Class they Seek to Represent

62.     It is the common, widespread and well-settled practice in the Juvenile Justice Division that detention hearings are only conducted on business days. This practice is so widespread and well settled that it constitutes a custom or usage with the force of law even though it has not been reduced to a written policy.

63.     Defendant Chief Judge Evans knows or should know that pursuant to this practice, juveniles arrested on weekends or court holidays are routinely detained in the JTDC for more than 48 hours without receiving a judicial determination of probable cause in violation of their Fourth Amendment rights.

64.     Defendant Evans acted and continues to act with deliberate indifference to the rights of L.G., A.C., R.R., N.D., and all other juveniles detained at the JTDC by failing to implement a court schedule that ensures that juveniles arrested on weekends or court holidays receive a probable cause hearing within 48 hours.

65.     The policy and practice described above was the moving cause behind the violations of the Fourth Amendment rights of L.G., A.C., R.R., and N.D. and current and future class members.

## Class Allegations

66.     Pursuant to Fed. R. Civ. P. 23(b)(2), the named Plaintiffs seek certification of Count I of this complaint as a class action. The named Plaintiffs seek to represent a class consisting of:

> All juveniles who are currently detained or in the future will be detained at the JTDC on a weekend or court holiday pending a detention hearing to determine probable cause to detain.

67.     The Plaintiff Class seeks a declaration that Defendant Chief Judge Evans' policy and practice of failing to provide detention hearings on weekends or court holidays is unconstitutional because it results in routine violations of class

members' Fourth Amendment right to a prompt judicial determination of probable cause.

68.     The Plaintiff Class also seeks an injunction ordering Defendant Chief Judge Evans to change the current policy and practice and to implement a schedule for detention hearings in the Juvenile Justice Division that ensures minors detained on weekends or holidays receive a prompt probable cause hearing.

69.     The proposed class is numerous. In 2013, the last year for which the Circuit Court of Cook County has made statistics available, the Juvenile Justice Division conducted 6,036 probable cause hearings for juvenile arrestees held in custody in Cook County. See, http://www.cookcountycourt.org/Portals/0/Probation/Juvenile%20Probation/Program%20Booklet%202014.pdf. Assuming that only 10 percent of those hearings were for individuals arrested on a Friday (a conservative estimate) and taken for a hearing the next regular business day, there are more than 600 class members each year.

70.     Joinder of all class members is impracticable. Not only is the class numerous, but membership in the class is also constantly changing. Any juvenile arrested in Cook County may be placed in the JTDC pending a judicial determination of probable cause. Accordingly, the membership of the class changes on a weekly basis as individuals are arrested, detained, and released from custody.

71.     There are questions of law and fact common to all class members, including but not limited to:

•       What is the current schedule in the Juvenile Justice Division for detention hearings;

14

- Whether the Supreme Court's mandate in *County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991) that the Fourth Amendment requires a judicial determination of probable cause to detain within 48 hours of arrest applies to minors held in juvenile detention facilities;

- Whether the Juvenile Justice Division's policy of holding detention hearings only on regular business days violates the Fourth Amendment rights of juveniles held at the JTDC on weekends or court holidays;

- How quickly must a minor held in a juvenile detention facility receive a judicial hearing to satisfy *Gerstein*'s requirement of a "prompt" probable cause hearing.

72.     All individuals falling within the class definition have been subject to the same policy and practice. Given the commonality of the questions pertinent to all class members, a single injunction or declaratory judgment would provide relief to each member of the class.

73.     Defendant Chief Judge Evans has acted and continues to act in a manner adverse to the rights of the proposed class, making final injunctive and declaratory relief appropriate with respect to the class as a whole.

74.     Plaintiffs and the class they seek to represent have been directly injured by Defendant Evans' policies and practices and members of the class are currently at risk of future harm from the continuation of these policies and practices.

75.     Plaintiffs will fairly and adequately represent the interests of the class and the Plaintiffs' claims are typical of the claims of all members of the proposed class.

15

76.     Plaintiffs' counsel are experienced in civil rights litigation, including *Monell* claims, civil rights class actions, and Fourth Amendment cases alleging excessive detentions. Plaintiffs' counsel will fairly and adequately represent the interests of the class.

## COUNT I
## 42 U.S.C. §1983: FOURTH AMENDMENT
### (*Monell* Official Capacity Claim Against Defendant Chief Judge Evans on behalf of L.G., A.C., R.R., N.D. and all others similarly situated)

77.     Plaintiffs and the members of the class reallege and incorporate as if fully set forth herein all of the allegations above.

78.     As a direct and proximate result of Defendant Evans' failure to schedule probable cause hearings for minors detained on weekends and court holidays, Plaintiffs and the members of the class have suffered a loss of their Fourth Amendment right to a prompt judicial determination of probable cause to detain after their arrests.

79.     In the absence of injunctive and declaratory relief, the members of the class will continue to suffer unreasonable deprivations of their liberty. The members of the class have no adequate or complete remedy at law to address the wrongs described herein. The injunctive and declaratory relief sought by the class is necessary to prevent continued and future injury.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)      Issue an order certifying this action to proceed as a class pursuant to Fed. R. Civ. P. 23(b)(2);

b)      Appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g);

16

c)     Enter judgment declaring that Defendant Chief Judge Evans' policies and practices described herein as applied to the class violate the Fourth Amendment of the U.S. Constitution;

d)     Enter a preliminary and then permanent injunction prohibiting Defendant Chief Judge Evans from continuing the unconstitutional policies and practices identified herein;

e)     Award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

f)     Grant such other relief as this Court deems just and proper.

**COUNT II**
**42 U.S.C. §1983: FOURTH AMENDMENT**
**(*Monell* Official Capacity Claim Against Defendant Superintendent Dixon on behalf of L.G., A.C., R.R., and N.D.)**

80.    Plaintiffs reallege and incorporate as if fully set forth herein all of the allegations above.

81.    As a direct and proximate result of Defendant Superintendent Dixon's deliberate indifference, Plaintiffs have suffered a loss of their Fourth Amendment rights.

82.    As a direct and proximate result of Defendant Superintendent Dixon's policies, the Plaintiffs have suffered damages including loss of physical liberty, physical pain and suffering, and emotional distress.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

a)     Enter judgment declaring that Defendant Superintendent Dixon's policies and practices described herein violate the Fourth Amendment of the U.S. Constitution;

17

b) Award Plaintiffs compensatory and/or nominal damages;

c) Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and other applicable law; and

d) Grant such other relief as this Court deems just and proper.

**Plaintiffs demand trial by jury.**

Respectfully submitted,

/s/ Adele D. Nicholas

/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
847-361-3869

Law Office of Mark G. Weinberg
3612 N. Tripp Ave.
Chicago, Illinois 60641
773-283-3913